**[J-70-2014][M.O. – Eakin, J.]**

# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 681 CAP |
| | : | |
| Appellee | : | Appeal from the Judgment of Sentence |
| | : | entered on 3/28/13 in the Court of |
| v. | : | Common Pleas, Criminal Division of |
| | : | Delaware County at No. CP-23- |
| | : | 0004586-1994 |
| WAYNE A. SMITH, | : | |
| | : | |
| Appellant | : | ARGUED: November 18, 2014 |

## *DISSENTING OPINION*

**MR. CHIEF JUSTICE SAYLOR**　　　　　　　　**DECIDED: December 21, 2015**

I respectfully dissent in this case centered upon the propriety of a death-penalty verdict. Primarily, I believe that the trial court erred in permitting the Commonwealth to elaborate upon an aggravating circumstance via testimony from the sister of the victim of a previous killing and in refusing to allow material and appropriate life qualification questions during juror *voir dire*.

Initially, although I take no issue with the majority's explanation that the Commonwealth is permitted to undertake some reasonable development of the facts underlying a conviction serving as an aggravating circumstance, I am not comfortable with the concept of "short-chang[ing]" a jury. Majority Opinion, *slip op.* at 8. Evidentiary determinations are regulated by rules and precepts designed to maintain fundamental fairness and administered through the exercise of sound discretion by the trial courts. In the application, there are many instances in which relevant information -- favorable to

either the Commonwealth or the defense – properly is withheld from lay jurors. As such, and since the jurors have no personal stake in the matter, respectfully, I find the majority's "short-changing" concept to be unsuited to the subject area.

Moreover, while developing facts pertinent to prior convictions serving as aggravating circumstances may be permissible in the abstract, doing so via contested testimony of a homicide victim's close relative is, in my view, unduly prejudicial, particularly in a scenario in which the underlying conviction had been secured by guilty plea. *Accord* Brief for Appellant at 20 ("To present evidence now that demonstrated a brutal, unprovoked and malicious killing, a crime much worse than that agreed to by the Commonwealth, is simply not fair."). Injection of eyewitness testimony relative to an aggravator merely centered on the fact of a conviction also fosters the potential for mini-trials concerning collateral facts. While, again, I recognize that the Commonwealth is to be afforded some latitude to present factual circumstances underlying previous convictions serving as aggravating circumstances, I believe that the development should be subject to judicious control by the trial courts and that the prosecution should be required to employ a less problematic methodology (such as introduction of the guilty plea colloquy).

Concerning the life qualification issue, I note that Appellant has presented an extensive argument predicated upon the insightful opinion of a federal district court in *United States v. Johnson*, 366 F. Supp. 2d 822 (N.D. Iowa 2005). As Appellant relates, *Johnson* elaborately explains the difference between: 1) case-specific *voir dire* questions designed to determine whether jurors harbor some bias relative to critical facts to be demonstrated by trial evidence, and 2) interrogatories seeking to pre-commit jurors to a particular verdict. *See id.* at 845-49. *Johnson* concludes, appropriately in my view, that the former line of case-specific questions may, in fact, be constitutionally

required to empanel a fair and impartial jury. *See id.* at 848 (explaining that a prohibition on such questions "may unconstitutionally impede a party's 'ability to exercise intelligently [a] challenge for cause against those biased persons on the venire who as jurors would unwaveringly impose' either a life or death sentence after a finding of guilt.'" (quoting *Morgan v. Illinois*, 504 U.S. 719, 733, 112 S. Ct. 2222, 2232 (1992))).

The majority appears to implicitly reject *Johnson*'s approach to case-specific questions based on the commonly-accepted admonition, as articulated in *Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831 (2003), that "[n]either counsel for the defendant nor the Commonwealth should be permitted to ask direct or hypothetical questions *designed to disclose what a juror's present impression or opinion as to what his decision will likely be* under certain facts which may be developed in the trial of the case." *Id.* at 456, 826 A.2d at 849 (emphasis added); *accord Ellington v. State*, 735 S.E.2d 736, 754 (Ga. 2012) ("[V]oir dire is not intended to pre-try the case on hypothesized facts and get jurors to commit to the outcome based on that speculative proof."). I believe, however, that this rationale applies only to pre-commitment-type interrogatories (*i.e.*, category "2" in the above paragraph) and not to case-specific questions appropriately framed to inquire into juror biases relative to critical facts. *See Johnson*, 366 F. Supp. 2d at 848-50; *accord United States v. Fell*, 372 F. Supp. 2d 766, 773 (D. Vt. 2005) ("A balance must be struck between seeking to discover biased jurors who could not be impartial given particular facts and getting jurors to commit to support a particular perspective on the evidence.").

For my part, I would follow the lead of the California Supreme Court in *People v. Cash*, 50 P.3d 332 (Cal. 2002), which held that, by absolutely precluding case-specific questioning pertaining to the fact of a previous homicide during life qualification, "the trial court created a risk that a juror who would automatically vote to impose the death

penalty on a defendant who had previously committed murder [or manslaughter] was empaneled and acted on those views, thereby violating defendant's due process right to an impartial jury." *Id.* at 342-43.

I recognize that the form of case-specific questions geared to assessing juror biases should be controlled by trial courts, and that Appellant's specific framing was not ideal, in that the interrogatory was not couched conditionally, in terms of what the trial evidence might show. *See Johnson*, 366 F. Supp. 2d at 849 (explaining that case-specific questions "should be prefaced by 'if the evidence shows' or some other reminder that an ultimate determination *must be based on the evidence at trial and the court's instructions.*" (emphasis in original)). Nevertheless, since the Commonwealth clearly had committed to pursuing the relevant aggravator and the Appellant's proposed question did not require jurors to commit to a particular result, but rather, concerned whether they could fairly consider the evidence at large and the trial court's instructions, I do not find this factor to be dispositive. Indeed, only a modest adjustment to the query was required to bring it into conformance with *Johnson*'s sound guidance.

A fair trial before an impartial factfinder is a fundamental component of due process of law. *See Morgan*, 504 U.S. at 727, 112 S. Ct. at 2228-29. *Voir dire* is a primary mechanism by which the impartiality requirement is assessed and vindicated. *See Rosales-Lopez v. United States*, 451 U.S. 182, 188, 101 S. Ct. 1629, 1634 (1981) ("Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled. Similarly, lack of adequate *voir dire* impairs the defendant's right to exercise peremptory challenges where provided by statute or rule[.]" (citation omitted)). In my view, the majority's wholesale rejection of Appellant's position

that reasonable, material, properly-framed case-specific *voir dire* should have been permitted squarely undercuts these core principles.

Madame Justice Todd joins this dissenting opinion.